KENNEDY, Justice
(dissenting).
John Lee Adams was convicted of assault in the first degree and was sentenced to 20 years’ imprisonment. The assault was a knife assault on his mother. The Court of Criminal Appeals affirmed the conviction in an unpublished memorandum and subsequently denied rehearing. Adams v. State, 658 So.2d 910 (Ala.Crim.App.1994) (table). We granted certiorari review in order to determine whether Adams had conclusively overcome the presumption of sanity. The majority has now quashed the writ. I dissent from that action.
Adams argues that overwhelming and un-refuted evidence at trial established his defense of not guilty by reason of insanity and that that evidence shows that he could not have appreciated the nature and wrongfulness of the act with which he was charged. *865 Relying on Sasser v. State, 387 So.2d 237 (Ala.Crim.App.1980), Adams argues that Ms conviction should be reversed.
Adams was 44 years old and was living with Ms mother at the time of the assault. On the day of the assault, he was described by Ms mother and Ms neighbors as not behaving in Ms “normal” manner. They described him as being angry and agitated and speaking in a nonsensical manner. (R.T. 20, 22, 34, 47, 52.) None of this behavior was typical for Adams. The police officer called to the scene described Adams as a person who was not behaving in a “rational” manner. (R. 57.)
A neighbor of Adams’s, Artie Harrington, testified that on the day of the assault Adams walked into her house and said that something was bothering him. He stated that he was going to kill three people and then grabbed a knife from Artie’s counter. Adams then ran out of the house and attempted to attack another neighbor; he subsequently attacked and injured Ms mother, Leola Adams. Ms. Harrington stated that she had never seen Adams angry before, but that she had seen him have a seizure, wMch had caused him to pass out.
Adams’s mother, Leola Adams, testified that on the day of the incident Adams had gone over to their neighbor’s house, as he had done every day. After returning from the neighbor’s house, she said, he assaulted her. She stated that he had seizures or “spells” occasionally and that he was taking medicine to slow the frequency of the seizures. The neighbors knew of Adams’s seizures, because they had helped Leola pick up Adams after the seizures stopped. She said that Adams was taking his medicine on the day of the incident.
His mother testified that Adams had been having seizures since Ms early twenties, when he had been shot in the head. She testified that Adams had been treated for alcohol abuse in the 1980s, but that he had not had anything to drink in the past few years and that he was not drinking on the day of the incident. She stated that Adams was not “himself’ on the day of the assault, but was very angry. She stated that she and Adams had never been in a fight as long as he had lived with her and that his behavior on the day of the incident was not normal.
The police officer called to the scene testified that Adams told him that “he was tired of the neighborhood families putting a machine on Ms head that made him spin around and stagger.” (R. 57.) The officer handcuffed Adams for Adams’s safety and for the officer’s own safety, after Adams began pacing in a large circle, becoming more irate.
State psychologist Wilburn Rivenbark testified that Adams had received psycMatric treatment in 1982, 1984, and 1989, and that Adams was mildly retarded. Dr. Rivenbark testified that, in Ms opinion, Adams was suffering from an orgamc brain disorder and chrome alcohol addiction. He stated that at the time of the incident Adams’s mental state severely interfered with Ms ability to understand what he was doing or to understand the consequences of Ms acts so as to judge whether they were right or wrong. He opined that on the day of the incident Adams was suffering from seizure activity and that the disorientation and disinMbition from the seizures caused Ms behavior that resulted in the attack on Ms mother. (R.T. 95-97.) He further opined that Adams’s mental state was a valid defense in this case.
The jury rejected Adams’s insamty defense and found him guilty of assault.
Alabama’s insamty defense is set out at § 13A-3-1, Ala.Code 1975. The defendant has the burden of proving that defense by clear and convincing evidence. Id.
In determining whether a defendant is or was insane, the jury may reject all expert testimony, even if it is without conflict. Christian v. State, 351 So.2d 623 (Ala.1977). However, opimon testimony, including that given by experts in insamty cases, must be weighed by the jury and not arbitrarily ignored. Id.
A jury verdict in a criminal case is presumed correct, and when the trial court de-mes a motion for a new trial that presumption is strengthened. Nevertheless, it is the duty of an appellate court to reverse a conviction if it is convinced that, the verdict is so against the great weight of the evidence that *866 the verdict is palpably wrong or unjust. Ex parte Turner, 455 So.2d 910 (Ala.1984). In Adams’s case, the proof of insanity is overwhelming and is uneontradicted. Therefore, his conviction should be reversed. Turner.
Adams showed conclusively that he was suffering from a mental defect at the time he assaulted his mother. The evidence of Adams’s insanity, from both expert and lay witnesses, was undisputed and uncontradict-ed by the State’s evidence. Those neighbors who knew Adams and who saw him on a regular basis testified that his behavior on the day of the incident was out of character. Adams’s mother stated that he was not behaving normally on the day of the incident. She also stated that she and Adams had never been in a fight and that there was no reason for him to attack her. It is noteworthy that the police officer investigating the incident, who had had no contact with Adams before the incident, immediately classified Adams’s behavior as abnormal. Unequivocal testimony from the state psychologist indicated that Adams was mentally incapable of forming an opinion as to whether his actions were right or wrong.
Nowhere in the State’s appellate brief does the State argue any specific facts that would support its contention that Adams was sane. The State merely summarily concludes that the jury’s verdict was supported by the record.
After thoroughly reviewing the record, I am convinced that Adams conclusively overcame the presumption of sanity and, therefore, that the jury’s verdict should not be allowed to stand. The judgment of the Court of Criminal Appeals should be reversed and the cause remanded with instructions to have the trial court hold a hearing pursuant to § 15-16-41, Ala.Code 1975, to determine whether Adams should be involuntarily committed to the Department of Mental Health based on what I believe to be a conclusive showing that he was not guilty by reason of insanity.